IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DEWAYNE A. HAWKINS                 :

                              :

    v.                             :   Civil Action No. DKC 09-0661

                              :

RUSSELL E. CHICK, ET AL.           :

                              :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this action arising from an alleged foreclosure rescue scheme are motions to dismiss filed by Defendants Preferred Title & Escrow, Inc. (Paper 33), Russell E. Chick (Paper 47), and Annette M. Leach (Paper 46), and a motion filed by Plaintiff DeWayne A. Hawkins seeking default judgments against Defendants Sunset Mortgage Company, L.P., American Wholesale Lender, and Charles Donaldson (Paper 61). The issues are briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, each of the motions to dismiss will be granted in part and denied in part, and Plaintiff's motion for default judgments will be denied.

**I.  Background**

Plaintiff DeWayne A. Hawkins purports to be the victim of a foreclosure rescue scheme designed and executed by eight individual and corporate defendants, acting in concert, to

defraud him of the equity in his home.   The scheme alleged by Plaintiff is similar to those at issue in other recent cases in this district; in fact, Plaintiff's complaint purports to raise many of the same claims.   *Cf. Proctor, et al. v. Metropolitan Money Store Corp., et al.*, 579 F.Supp.2d 724, 726 (D.Md. 2008). In one such case, Judge Messitte summarized the *modus operandi* of such schemes:

> Typically, a homeowner facing foreclosure is identified by a rescuer through foreclosure notices published in the newspapers or at government offices.   The rescuer contacts the homeowner by phone, personal visit, card or flyer, and offers to stop the foreclosure by promising a fresh start through a variety of devices.   As the date for the foreclosure approaches and the urgency of the matter becomes greater, the rescuer or some entity with which he is linked agrees to arrange for the pay-off of the mortgage indebtedness and to see to the transfer of title to the property to an investor pre-arranged by the rescuer, often with a leaseback of the property to the homeowner for a period of time, occasionally giving him the right to repurchase the property after the lease ends.   The rescuer imposes heavy fees or other charges for his services, in effect stripping some if not all of the homeowner's equity, and does all this with little or no advance notice to the homeowner, who is usually unrepresented by counsel.

*Johnson, et al. v. Wheeler, et al.*, 492 F.Supp.2d 492, 495-96 (D.Md. 2007) (footnote omitted).

Viewing Plaintiff's complaint in the light most favorable to him, as the court must when considering motions to dismiss,

the scheme occurred as follows. From December 2003 to the present, Plaintiff and his family have resided at 1106 Abel Avenue in Capitol Heights, Maryland ("the Property"). In early 2005, Plaintiff began experiencing financial difficulties and fell behind on his mortgage payments. On or about April 28, 2005, a foreclosure was docketed in the Circuit Court for Prince George's County, Maryland.

Around the same time, Plaintiff came into contact with a representative of Defendant Sunset Mortgage Company, L.P. ("Sunset Mortgage"). Sunset Mortgage is a Pennsylvania entity licensed to do business as a mortgage broker in Maryland; it advertises "credit repair" and "foreclosure consult[ing]" services, primarily targeting "distressed homeowners." (Paper 2, Complaint, at ¶¶ 9, 10). Sunset Mortgage offered its services to Plaintiff, and Plaintiff agreed to participate in its "program." Thereafter, Plaintiff signed "illegal form documents representing that [he] would be assisted to save his home [from foreclosure] and improve his credit," and granted power of attorney to Defendant Charles Donaldson ("Donaldson"), a loan officer employed by Sunset Mortgage, "for the purposes of representing his interests" at a subsequent settlement of the Property (*Id.* at ¶ 33).

Sunset Mortgage arranged for the Property to be sold to Defendant Russell E. Chick ("Chick"), the alleged "straw buyer"

3

in the scheme, and further arranged for one or more mortgages in Mr. Chick's name based on the full purchase price of the Property, which was "far in excess of the total amount of the Plaintiff's defaulted or delinquent mortgage." (*Id*. at ¶¶ 5, 19, 34).   Mr. Chick's mortgages were funded by Defendant American Wholesale Lender ("AWL")[1], and a "promissory note securing the [] Property" was subsequently purchased or assigned to Defendant HSBC Mortgage Corporation ("HSBC"). (*Id*. at ¶¶ 16, 17).   Plaintiff was told that he would be permitted to remain in his home for one year after the sale by paying an unspecified amount of monthly rent, and that he would thereafter "be able to re-purchase the property." (*Id*. at ¶ 19, 37).   At some point prior to the settlement date, Mr. Chick paid-off Plaintiff's delinquent mortgage and the pending foreclosure proceeding was dismissed.

On September 23, 2005, Mr. Chick and Mr. Donaldson appeared for closing at the office of Defendant Preferred Title & Escrow, Inc. ("Preferred Title").   Plaintiff was not present. (*Id*. at ¶ 47).   The proposed settlement presented certain "irregularities and illegalities," such as the fact that "the 'buyer's' expenses were actually being paid by the 'seller' of the property";

---

[1] Counsel for "America's Wholesale Lender" has recently entered an appearance in the case.  (Paper 62).  It appears that this defendant was incorrectly named "American Wholesale Lender" in the complaint.

moreover, Preferred Title, the settlement agent, allegedly "used and prepared false HUD-1 Settlement Statements which represented that the fees were being paid by the 'buyer.'" (*Id.* at ¶ 41). The HUD-1 statement and other closing papers were executed by Mr. Donaldson, on Plaintiff's behalf, pursuant to his power of attorney.

Preferred Title allegedly misrepresented that the proceeds from the sale were distributed to Plaintiff when, in fact, it "channeled" this money to the other defendants through a series of "kickbacks" and "unearned fees," keeping "hefty fees" for itself. (*Id.* at ¶¶ 41, 42, 44, 45). Specifically, Mr. Chick was awarded a "kickback" for "paying off Plaintiff's mortgage arrears to cure the foreclosure on the [] Property and/or for loaning his credit to fund the transaction" (*id.* at ¶ 34); Mr. Donaldson was "paid for a mortgage loan transaction as the loan officer for Sunset Mortgage" (*id.* at ¶ 35); and Sunset Mortgage "extract[ed] fees payable to [itself], including insurance premiums [it] took as agents for Defendant[] First American" (*id.* at ¶ 37). Moreover, starting in July 2007 and continuing through September 2008, Mr. Chick "required and received so-called 'rent' payments from Plaintiff and/or Plaintiff's father, George Hawkins, in an amount in excess of prior agreed terms, specifically $1,850.00." (*Id.* at ¶ 19). Collection of these payments was "facilitated" by Mr. Chick's wife, Defendant

Annette M. Leach ("Leach"), who "routinely contact[ed] Plaintiff and/or Plaintiff's father . . . on behalf of [Mr.] Chick." (*Id.* at ¶ 20).

By the time the rental period concluded, "all or most of the equity in the property was gone." (*Id.* at ¶ 37).  Plaintiff was apparently unable to repurchase the Property, as that would have required him to obtain a new mortgage in an amount significantly greater than that which he initially owed.  The end result of his participation in Defendants' "program" was that Plaintiff was deprived of approximately $51,000 in home equity and once again faced the prospect of losing his home. (*Id.* at ¶¶ 6, 46).[2]

On or about September 22, 2008, Plaintiff filed an eight-count complaint in the Circuit Court for Prince George's County, alleging, as to all defendants, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.*, and the Maryland

---

[2] The complaint clearly implies that Plaintiff was unable to repurchase the Property from Mr. Chick at the end of the rental period; however, it also asserts that "Plaintiff is now threatened with the loss of his home to foreclosure on a loan that, upon information and belief, was funded as a direct and proximate result of Sunset Mortgage's, American Wholesale's and HSBC's loose if not non-existent underwriting standards." (Paper 2, ¶ 6).  In light of the factual allegations asserting that these defendants funded Mr. Chick's mortgage, the meaning of this statement is unclear.

Protection of Homeowners in Foreclosure Act ("PHIFA"), Md. Code Ann. Real Prop. § 7-301, *et seq.* As to all defendants except HSBC, the complaint alleged gross negligence, and as to Mr. Chick, AWL, HSBC, and Sunset Mortgage, alleged violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.* As to Mr. Chick alone, the complaint additionally sought a declaratory judgment and injunctive relief under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a).

On March 16, 2009, the case was removed by Defendants First American, HSBC, Preferred Title, Donaldson, Chick, and Leach to this court on the basis of federal question jurisdiction. (Paper 1). HSBC answered the complaint on April 20, 2009 (Paper 29), and on the same date, First American separately filed its motion to dismiss and memorandum in support (Papers 30, 31). The dismissal motions of Preferred Title, Ms. Leach, and Mr. Chick followed. (Papers 33, 46, 47).

On May 26, 2009, Plaintiff's counsel moved to withdraw their appearance (Paper 44) and concomitantly filed a notice of voluntary dismissal as to Defendant First American (Paper 45). While their withdrawal motion was still pending, Plaintiff's counsel also filed papers consenting to the dismissal of the first four counts of the complaint (the RICO and RESPA counts) as to Preferred Title, but opposing its motion to dismiss on the remaining counts. (Paper 48). By a letter order dated August

13, 2009, the court granted the motion to withdraw appearance of Plaintiff's counsel. (Paper 52).[3]   Thereafter, Plaintiff, proceeding *pro se*, filed papers approving his prior counsel's voluntary dismissal of First American and consenting to the dismissal with prejudice of the first four counts as to Preferred Title. (Paper 53). He additionally consented to the dismissal of the RICO counts as to Mr. Chick and Ms. Leach, but otherwise opposed their motions to dismiss (Papers 59, 60), and filed a motion seeking default judgments against the non-responding defendants, Mr. Donaldson, Sunset Mortgage, and AWL (Paper 61).

Because Plaintiff has consented to the dismissal of the first three counts of the complaint (the RICO counts) as to Defendants Preferred Title, Chick, and Leach, these claims will be dismissed. Also upon Plaintiff's consent, the court will dismiss the RESPA claim as to Defendant Preferred Title. Upon the dismissal of the RICO and RESPA claims against Preferred Title, no federal claims will remain as to this defendant. With respect to Mr. Chick and Ms. Leach, the alleged RESPA violations remain, as does the TILA claim against Mr. Chick alone.[4]   For the

---

[3] This letter order was originally issued on July 13, 2009, but was mailed to an incorrect address for Plaintiff. On August 13, it was amended and reissued.

[4] While Plaintiff's complaint for declaratory or injunctive relief against Mr. Chick is based upon the Federal Declaratory

reasons discussed below, Plaintiff has failed to state a claim upon which relief can be granted as to these or any of the federal claims presented by his complaint.   Accordingly, the federal claims as to all defendants will be dismissed.   Because the parties are not completely diverse, and the federal claims are being dismissed early in the litigation, the court declines to exercise supplemental jurisdiction over the remaining state law claims, and they will not be addressed.   Instead, the remaining claims will be remanded to the circuit court. *See* 28 U.S.C. § 1367(c)(3).

## II.  Motions to Dismiss

### A.  Standard of Review

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint.  *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).   Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S.

---

Judgment Act, 28 U.S.C. § 2201, that provision "does not provide an independent basis for subject-matter jurisdiction."  *Allied Mechanical Contractors, Inc. v. Industrial Relations Council for Plumbing and Pipefitting Industry*, 685 F.Supp. 552, 564 (W.D.N.C. 1988); *see also Schilling v. Rogers*, 363 U.S. 666, 677 (1960) ("the Declaratory Judgment Act is not an independent source of federal jurisdiction; the availability of such relief presupposes the existence of a judicially remediable right.   No such right exists here" (internal citations omitted)).

506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007).   That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal marks and citations omitted).

In its determination, the court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff.   *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).   The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Iqbal*, 129 S.Ct. at 1950, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'"   *Iqbal*, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).   Thus, "[d]etermining whether a complaint

states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

### B. Fed.R.Civ.P. 12(b)(6)

### 1.   The RICO and RESPA Claims

The common counts of Plaintiff's complaint as to all defendants are the alleged violations of RICO and RESPA. These claims are compromised from the outset by the fact that the complaint appears to be a composite of one or more prior complaints alleging similar schemes. As First American recognized in the memorandum in support of its motion to dismiss, large portions appear to have been copied verbatim from the complaint in the *Proctor* litigation before Judge Titus. (Paper 31, at 2-4). While this practice is not, in and of itself, necessarily improper, the failure to tailor the apparently cut-and-pasted portions to the facts at issue here jeopardizes the survival of Plaintiff's complaint. For example, the complaint contains multiple allegations referencing parties that have no apparent relation to the case; frequently uses pronouns inconsistent in gender and/or number with the nouns they appear to reference; occasionally refers to a purported class of plaintiffs, although no class has been alleged; and references certain facts that are either wholly inapplicable to the case or were never properly developed. The result is that

the complaint is frequently repetitive, occasionally nonsensical, and at times, self-contradictory. It is not this court's role to attempt to divine Plaintiff's intent where it is not otherwise apparent, and it declines to do so here.

Moreover, while Plaintiff appears to have borrowed liberally from the *Proctor* complaint in some respects, he critically has failed to do so in others. In *Proctor, et al. v. Metropolitan Money Store Corp., et al.*, 2009 WL 2516361, *3 (D.Md. Aug. 13, 2009) ("*Proctor II*"), Judge Titus determined that the plaintiffs' complaint was sufficient to state a RICO claim under the heightened pleading standard of Fed.R.Civ.P. 9(b), where it set forth detail of the alleged scheme with the requisite particularity:

> First, Plaintiffs have pleaded the predicate acts of mail and wire fraud with particularity against the background of a grand mortgage foreclosure rescue scam that involved the sale and leaseback of Plaintiffs' properties from which [two settlement agents] among others would siphon off and transfer the equity illegally. The Second Amended Complaint details "the issuance of false and deceptive HUD-1 settlement statements and other loan documents and instruments, fraudulent and false correspondence, and bank wired monies." It also provides detailed examples for each of the named plaintiffs that include dates (and time stamps down to the hundredths of a second, in some cases), locations, documents, exact monetary figures, and details about the alleged acts undertaken by [the settlement agents] among others.

*Proctor II*, 2009 WL 2516361, at *3.  The plaintiffs in *Proctor* "not only provided a general outline of the alleged mortgage foreclosure scheme," but also "included specific dates and times that this scheme was alleged to have been conducted, the specific individuals and entities alleged to be responsible, and the specific fraudulent information communicated in written loan and title documents."  *Id*. at *4.  Furthermore, the plaintiffs demonstrated how the settlement agents, through which all other defendants were connected, "supervis[ed] the fraudulent transactions with willful blindness, preparing false HUD-1 statements, by representing to the plaintiffs . . . that the transactions and supporting documents were accurate, and aiding and abetting the scheme by laundering the proceeds from the settlement transactions to make disbursements appear legitimate."  *Id*.

Likewise, in *Wheeler*, 492 F.Supp.2d at 501, Judge Messitte considered a motion to dismiss a RESPA claim in a similar foreclosure rescue scheme, finding that "there are sufficient factual averments in the Complaint to support relief under RESPA."  "This is particularly true," the court reasoned, "in light of the fact that the HUD-1 Settlement Statement is appended to and incorporated into the Complaint."  *Id*.  That document, together with the factual allegations of the

complaint, demonstrated the relationship between the defendants, and "arguably suggest[ed] kickbacks made pursuant to agreement among and between the named Defendants which carried the costs of settlement beyond what was reasonable to expect in connection with the ordinary transfer of a house title." *Id.* at 502. Moreover, the complaint in *Wheeler* established specific amounts incurred for closing costs, escrow payments, and handling charges.

Plaintiff's complaint, by contrast, includes no such detail. Like *Proctor* and *Wheeler*, the complaint here principally relates to an allegedly fraudulent HUD-1 settlement statement; yet, Plaintiff has not attached this document to his complaint, nor has he otherwise set forth any factual detail as to the "kickbacks" and "unearned fees" at issue. Moreover, he has failed to identify clearly the role of each defendant in the alleged scheme or the connection between them. Most of his factual allegations, in fact, are attributed to the defendants collectively. The initial paragraph of the "factual background" portion of the complaint states, "[t]he foreclosure rescue scam described herein was a criminal enterprise which was made up of an association in fact consisting of [] each of the Defendant individuals and corporations," designating the defendants, collectively, as "RICO Defendants." (Paper 2, at ¶ 24). Thereafter, the vast majority of the complaint cites the "RICO

14

Defendants" as engaging in the discrete acts that form the basis of the alleged scheme – *e.g.*, "the RICO Defendants had the Plaintiff sign illegal form documents"; "the RICO Defendants arranged for the sale of the Plaintiff's equity rich property to a 'straw buyer'" (*id.* at ¶¶ 33, 34) – although it is clear that not all defendants physically engaged in those acts.[5]   Self-evidently, such allegations are not pleaded with the particularity required under *Twombly* and *Iqbal*, nor does the RICO claim meet the heightened standard of Fed.R.Civ.P. 9(b).

### a. RICO

Plaintiff consented to the dismissal of the RICO counts on the basis of the motion to dismiss filed by Preferred Title, and expressly conceded that he cannot plead a RICO claim.   In his response to the motion, Plaintiff stated that he "voluntarily concedes the points raised by Preferred Title regarding its defenses raised to the RICO Counts (I-III) . . . ." (Paper 48 at 3.)   In its motion, Preferred Title argued that Plaintiff failed to allege facts sufficient to show a pattern of

---

[5] The allegations that do relate to specific defendants, moreover, frequently do so only in relation to the collective "RICO Defendants," a group to which the specific defendants belong.   For example, in count four of the complaint, Plaintiff alleges, "The RICO Defendants . . . were 'associates' of Sunset Mortgage in connection with the transactions involving Plaintiff." (*Id.* at ¶ 148).   The problem is that Sunset Mortgage is included among the "RICO Defendants"; thus, the allegation states, in part, that Sunset Mortgage is an "associate" of itself.

racketeering activity.  That concession would seem to undermine the purported basis for any of Plaintiff's RICO claims against any defendant, as the scheme initially alleged by Plaintiff simply falls apart when the links through Preferred Title are removed.  Preferred Title was allegedly the vehicle through which the "kickbacks" and "unearned fees" for the entire scheme were "channeled and facilitated"; so critical was its role that "[t]he scheme . . . would not have been possible but for the complicity and participation of Preferred Title." (*Id*. at ¶ 34).  When Preferred Title is removed from the equation, however, so too is the alleged nexus between the defendants. Consequently, the conspiratorial network upon which the RICO claims rely is missing.  Thus, the RICO counts as to HSBC, Sunset Mortgage, and AWL, would seem to be subject to dismissal as well.  HSBC has answered the complaint, challenging its sufficiency under Fed.R.Civ.P. 9(b), *inter alia*, as an affirmative defense, but it has not moved to dismiss the claims. Sunset Mortgage, AWL, and Mr. Donaldson have failed to respond altogether and Plaintiff claims they are in default.

When a party is in default, the well-pled allegations as to liability are accepted as true; however, that does not mean that liability is automatically shown.  To the contrary, if a complaint does not demonstrate entitlement to relief, default will not be entered. *Ryan v. Homecomings Financial Network*, 253

16

F.3d 778, 780 (4th Cir. 2001).   In this case, following the dismissal of the alleged settlement agent (Preferred Title) and straw purchaser (Mr. Chick), there are no well-pled allegations for the RICO counts that establish liability for any of the three non-responding defendants.   Thus, there is no basis for entry of default, and certainly no basis for default judgment, as to those claims.

For the foregoing reasons, the court finds that Plaintiff has failed to state a civil RICO claim, particularly under the heightened pleading standard of Fed.R.Civ.P. 9(b), as to any of the defendants.   Thus, in addition to dismissing these counts, upon Plaintiff's consent, as to Defendants Preferred Title, Chick, and Leach, the court will *sua sponte* dismiss them as to the remaining defendants as well.

**b. RESPA**

Plaintiff has also conceded to dismissal of the RESPA claim for the reasons set forth by Preferred Title. (Papers 48 and 53).   The basis for Preferred Title's motion was the failure to bring the claim within the applicable one-year statute of limitations.$^{6}$   (Paper 33 at 5).   Plaintiff has alleged violations

---

$^{6}$ The statute of limitations is an affirmative defense that a party typically must raise in a pleading under Fed.R.Civ.P. 8(c), and is usually not an appropriate ground for dismissal. *See Eniola v. Leasecomm Corp.*, 214 F.Supp.2d 520, 525 (D.Md. 2002); *Gray v. Metts*, 203 F.Supp.2d 426, 428 (D.Md. 2002). Dismissal is proper, however, "when the face of the complaint

of RESPA under 12 U.S.C. § 2607.   Pursuant to 12 U.S.C. § 2614, an action under § 2607 by a private litigant must be brought within one year of "the date of the occurrence of the violation."   Other courts of this district considering application of statute of limitations defenses in the RESPA context have found the "date of occurrence" to be the closing date on the property at issue.   *See, e.g., Robinson v. Fountainhead Title Group Corp.*, 447 F.Supp.2d 478, 483 (D.Md. 2006); *Proctor II*, 2009 WL 2516361, at *14.[7]   Here, it is undisputed that the settlement on Plaintiff's property occurred on September 23, 2005.   As Plaintiff filed his complaint on or about September 22, 2008, he clearly raised his claim outside the one-year limitations period.   The RESPA claim, therefore, is time-barred, as conceded by Plaintiff.

---

clearly reveals the existence of a meritorious affirmative defense." *Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996).   *See* 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure*, § 1357, at 714 (3rd ed. 2004) ("A complaint showing that the governing statute of limitations has run on the plaintiff's claim is the most common situation in which the affirmative defense appears on the face of the pleading and provides a basis for a motion to dismiss under Rule 12(b)(6)").   Here, too, Plaintiff does not contest the applicability of the defense to his RESPA claim.

[7] While these cases have gone on to consider the doctrine of equitable tolling, Plaintiff does not allege that such tolling applies, nor has he identified the date he discovered that the transaction was, in fact, fraudulent.

### 2.   The TILA Claims

The sole remaining federal claims are alleged violations of TILA by Mr. Chick, AWL, HSBC, and Sunset Mortgage (collectively, "TILA Defendants").   Mr. Chick has moved to dismiss the entire complaint as to himself, contending generally that Plaintiff fails to allege any cognizable claim against him within the statute of limitations, and specifically incorporating the arguments made by First American Title, which was not named in the TILA count and thus did not address that claim.

TILA establishes disclosure requirements applicable to lenders in consumer credit transactions.   Under 15 U.S.C. § 1638, which governs transactions that are not open-ended, creditors are required to disclose a list of specific loan terms to borrowers.   Here, Plaintiff alleges that "in originating or pretending to originate a consumer loan to Plaintiff," the TILA Defendants violated this provision by failing "to disclose properly and accurately": the amount financed; the finance charges and fees payable to third parties; the "total of payments"; the annual percentage rate; the number, amount, and due dates or period of payments; that a security interest was taken in the Property; and by failing to provide copies of the notice of the right to rescind and the date the rescission period expired.   (Paper 2, ¶ 200).

Clearly, there can be no liability for Mr. Chick, HSBC, or Mr. Donaldson under TILA.  According to the complaint, Mr. Chick is the "straw buyer" of the Property; HSBC is a subsequent holder of a promissory note securing the Property; and Mr. Donaldson is an employee of Sunset Mortgage, which originated the mortgage on behalf of AWL, the creditor.  Thus, none of these defendants are alleged to be creditors such that TILA could apply.

Moreover, Plaintiff likely has no standing to bring his TILA claims.  "TILA confers a statutory 'right of action only on a borrower in a suit against a borrower's creditor.'" *Mortenson v. Home Loan Center, Inc.*, 2009 WL 113483, *2 (D.Ariz. Jan. 16, 2009) (quoting *Talley v. Deutsche Bank Trust Co.*, 2008 WL 4606302, *2 (D.N.J. Oct. 15, 2008)).  The borrower at issue in the transaction here is Chick, not Plaintiff.  Accordingly, it is likely that Plaintiff has failed to state a claim for relief under TILA as to any of the named defendants.

Finally, and most conclusively, Mr. Chick has raised a statute of limitations defense with respect to Plaintiff's TILA claim.  An individual must bring an action under TILA within one year of the date of occurrence of the alleged violation.  15 U.S.C. § 1640(e).  As Plaintiff has failed to do so here, his TILA claim is barred by the statute of limitations.

### III. Applicability to Non-Moving Defendants and Plaintiff's Motion for Default Judgments

As discussed above, Plaintiff has failed to state a federal claim against those defendants who have filed motions to dismiss.  Also as discussed, those same failings apply to the other defendants as well.  Although HSBC has filed an answer, and the others have not responded, the federal claims can be dismissed as to all defendants.[8]

Because Plaintiff has failed to state a claim entitling him to relief on the federal claims listed in his complaint, his motion for default judgments against AWL, Sunset Mortgage, and Mr. Donaldson cannot prevail.  While it is true that these defendants have thus far failed to respond to his complaint, it is equally true that Plaintiff has failed to seek entries of default against them, as required by Fed.R.Civ.P. 55(a), prior to filing his motion for default judgments, under Fed.R.Civ.P. 55(b).  Even if he had done so, however, he would not be entitled to entry of default judgments.  Granting or denying such relief is entirely within the court's discretion, and a motion for default judgment may be denied where the court

---

[8]   While he has not formally entered an appearance in the case, Mr. Donaldson was among the defendants who filed a notice of removal to this court (Paper 1), and subsequently acknowledged that he was served with the complaint on February 22, 2009 (Paper 26 at 2, n.1).  Moreover, as noted previously, counsel has recently entered an appearance on behalf of AWL. (Paper 62).

determines that the underlying complaint fails to state a claim for relief. *See Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001). As stated above, Plaintiff's complaint clearly fails to state a claim upon which relief can be granted as to each of the federal claims against the non-responding defendants; accordingly, his motion for default judgments will be denied.

While Plaintiff alternatively seeks permission for leave to amend the RESPA and TILA counts of his complaint as to Defendants Chick and Leach (Papers 59, 60), given the statute of limitations issues as to these claims, *inter alia*, granting such relief would serve no legitimate purpose. *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995) (denying motion for leave to amend where amendment "would be futile because the case would still fail to survive a motion to dismiss"). Because the court will remand the case, moreover, Plaintiff will be free to amend his complaint with regard to the remaining state law claims upon remand to the circuit court. *See* Md. Rule 2-341(a).

## IV.  Conclusion

For the foregoing reasons, the motions to dismiss filed by Defendants Preferred Title, Chick, and Leach will be granted as to the federal counts of the complaint (counts one, two, three, four, and eight). Moreover, the court will dismiss *sua sponte* the same counts as to Defendants HSBC, AWL, Sunset Mortgage, and Donaldson, and the case will be remanded to the Circuit Court

for Prince George's County for disposition of the remaining state law claims.  A separate Order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge